48 N.Y.2d 127 (1979)
In the Matter of Fidelity and Deposit Company of Maryland, Respondent,
v.
Parsons & Whittemore Contractors Corporation, Appellant.
Court of Appeals of the State of New York.
Argued September 12, 1979.
Decided October 25, 1979.
Stephen P. H. Rachlis for appellant.
William Hart and Robert M. MacAllister for respondent.
Judges JASEN, WACHTLER, FUCHSBERG and MEYER concur with Judge JONES; Chief Judge COOKE dissents in part and votes to modify in a separate opinion in which Judge GABRIELLI concurs.
*129 JONES, J.
By incorporation in its performance bond of a subcontract containing a broad arbitration clause, the surety company agreed that disputes arising under the subcontract between the general contractor and the subcontractor would be submitted to arbitration and that it would be bound by the determinations made in such arbitration. This being so, the surety company was not entitled to a stay of such arbitration. It did not agree, however, that separate and distinct controversies, if any, which might arise under the terms of the performance bond between the general contractor as obligee thereunder and the surety company would be submitted to arbitration. Accordingly the stay should be upheld with respect to arbitration of such matters.
Parsons & Whittemore Contractors Corporation, engaged as general contractor in the construction of a building in Hempstead, Long Island, entered into a subcontract with Central Rigging and Contracting Corporation. The subcontract contained two provisions pertinent to the disposition of this appeal. The first, contained in article F, set forth Central's obligation to furnish a performance bond:
*130
"ARTICLE FC>"Bonds
"F.1. The Contractor [Central] shall, within two (2) weeks from the date of this Contract furnish or cause to be furnished (i) a bond covering the faithful performance of the Contract and the payment of all obligations thereunder in the penal sum equal to one hundred percent (100%) of the Contract Price and (ii) a labor and materials payment bond or bonds (for payment of all persons performing labor or furnishing materials in connection therewith) for fifty percent (50%) of the maximum price of this Contract.
"F.2. The bonds shall be in such form and substance as is acceptable to P&W and shall be issued by a first class insurance company and shall bind the insurance company jointly and severally with the Contractor and all his subcontractors and shall remain in full force and effect from the date of execution of this Contract and until one (1) year from the issuance of the acceptance certificate pursuant to Article XXVI of the General Conditions of the Contract."
The second, incorporated as part of article XXV of the General Conditions of Contract, was the arbitration clause: "All disputes arising out of this Contract, its interpretation, performance or breach, shall be submitted to arbitration at New York City in accordance with the rules then obtaining of the American Arbitration Association."
In conformity with the requirements of article F, Central executed a performance bond with Fidelity and Deposit Company of Maryland which provided that "Principal and Surety bind themselves [etc.] jointly and severally" and, after describing the subcontract between Parsons and Central, continued, "which subcontract is by reference made a part hereof".
Following an alleged default in performance by Central, Parsons served a demand for arbitration addressed both to Central and to Fidelity in which the nature of the dispute was stated as "Breach of contract on the part of Central Rigging and Contracting Corporation. Guarantee by Fidelity and Deposit Company of Maryland of performance of such contract", followed by identification of the subcontract and the performance bond. The relief sought was an "award for damages for a sum not less than $3,053,778.00". Fidelity promptly made an application to stay the arbitration, which application was *131 opposed by Parsons. Special Term stayed the arbitration and the Appellate Division affirmed. We granted leave to appeal and now modify the disposition below.
Respondent surety company contends, and the courts below agreed, that Fidelity is entitled to a stay because it is not required to arbitrate its liability under the performance bond, which otherwise contains no provision for arbitration, in consequence of the incorporation by reference in that bond of the subcontract which did contain an arbitration clause. This conclusion withstands analysis only in part. A critical distinction must be drawn between disputes arising under the subcontract between Parsons and Central (in the resolution of which Fidelity as surety on the performance bond has a very real and practical interest) and possible unrelated differences which may arise between Fidelity and Parsons as to the liability of the surety company under the terms of its performance bond. Additionally the agreement made by the surety company must be precisely defined.
As to disputes between the general contractor and the subcontractor concerning failure of performance by the latter, those two parties expressly agreed that their differences should be submitted to arbitration for resolution. By contrast, there was no agreement on the part of any party that controversies arising as to rights and obligations under the terms of the performance bond would be submitted to arbitration.
In defining the agreement made by the surety company it is accurate to say that it cannot be held to have agreed to participate in arbitration proceedings with respect to any dispute whatsoever. Certainly there is no language in the performance bond on which to base any argument that it was obligated to submit disputes arising under its performance bond (as distinguished from disputes arising under the subcontract) to resolution by arbitration. The arbitration clause in the subcontract provided only for arbitration of disputes arising under that contract. But that does not end the analysis of the obligations of the surety company. Although it did not agree to participate in any arbitration, it did accept the agreement of the general contractor and the subcontractor that disputes between them would be settled by arbitration. An implicit corollary of that acceptance was agreement by the surety company that for purposes of later determining its liability under its performance bond, it would accept and be bound by the resolution reached in the arbitration forum of *132 any dispute between the general contractor and the subcontractor.
The consequence of this analysis of the rights and obligations of the parties under the documents which they executed in this instance is that the underlying dispute between Parsons and Central as to alleged defaults in performance of the subcontract by Central are to be submitted to and resolved in arbitration, as both of those parties appear to recognize. If there be an arbitration award adverse to Central and if it thereafter becomes necessary to adjudicate the obligations of Fidelity to Parsons under the provisions of the performance bond, the question of Central's liability may not be relitigated but the arbitration award will be binding both on Fidelity and on Parsons. This being so, Fidelity is not entitled to a stay of arbitration of the underlying dispute. It may be that Fidelity could not be compelled to participate in that arbitration on the one hand, or on the other that Fidelity could not force its way into the arbitration proceedings over the objection of one or both of the parties to the subcontract.[*] Those issues, however, are not tendered on the appeal before us. For present purposes it suffices to hold that, inasmuch as it has agreed to accept the arbitral determination as to Central's liability to Parsons, to the extent that it is interested in or affected by that determination it is not entitled to a stay of arbitration.
This result makes good sense and must be deemed to have been within the contemplation and intention of the parties. The liability of the surety on a performance bond customarily follows the liability of the principal on the bond. By express provision of both the subcontract and the performance bond, the liability of Central as principal and Fidelity as surety was joint and several; all reason argues against adjudication of such joint and several liability of the two obligors in separate forums.
The determination that we make in this case is supported by our decision in Madawick Contr. Co. v Travelers Ins. Co. (307 N.Y. 111). In that case an insurance company had issued a policy of liability insurance protecting a subcontractor against *133 its contractual obligation to indemnify the general contractor against liability that might be imposed on the latter. The insurance policy contained no arbitration provision but the policy was expressly written with reference to the subcontract which created the contractual liability of the subcontractor-insured and which did contain a provision for arbitration of disputes between the general contractor and the subcontractor. We rejected the argument of the insurer that in the absence of an arbitration clause in the insurance policy it was not obligated to defend or participate in the arbitration proceeding brought by the general contractor against the subcontractor. We held there, as here, that in consequence of the adoption of the provisions of the subcontract in the insurance policy, the insurer's obligation embraced the submission to arbitration expressly agreed to by the parties to the subcontract. To the extent that our prior decision in Matter of Lehman v Ostrovsky (264 N.Y. 130) may be read as supporting a different conclusion it is overruled.
Accordingly, for the reasons stated, the order of the Appellate Division should be modified, with costs, to the extent of denying Fidelity's application to stay arbitration of disputes arising between Parsons and Central under the provisions of the subcontract, and as so modified, affirmed.
Chief Judge COOKE (dissenting in part).
The parties to this dispute are told here that the surety is bound by a determination in arbitration between Parsons and Central but are left in doubt concerning whether Fidelity can be compelled to or can demand the right to participate in that proceeding. It is this gap in the majority's decision that is found objectionable and from which this dissent emanates.
Arbitration was sought on the alleged breach by Central as well as Fidelity's liability therefor as surety. The prevailing opinion concludes that Fidelity has a sufficient interest to participate in the arbitration between Parsons and Central, yet leaves for another day one of the questions presented on this appeal: whether Fidelity can be compelled to arbitrate a dispute concerning an alleged breach of the subcontract. At the same time, however, it is determined that Fidelity did not agree to participate in any arbitration by incorporating the subcontract into its bond. Rather, so the reasoning goes, Fidelity merely accepted the agreement to arbitrate between Parsons and Central and thereby agreed to be bound by a *134 determination in a proceeding between those parties. Such positions are the points of departure.
The arbitration clause in the subcontract provides that "[a]ll disputes arising out of this Contract, its interpretation, performance or breach, shall be submitted to arbitration". Parsons and Central thereby agreed to submit to arbitration; but the language of the clause does not limit this method of resolution to disputes between the contractor and subcontractor. The majority is correct in determining that Fidelity defined its obligation under the bond by incorporating this clause. The obligation thus defined, however, is not merely that Fidelity would be bound by a determination in arbitration between Parsons and Central, but rather, that Fidelity agreed to submit to arbitration disputes concerning the subcontract. Indeed, this conclusion is implicit in the majority's overruling of Matter of Lehman v Ostrovsky (264 N.Y. 130).
The incorporation of the subcontract and the language of the arbitration clause necessarily require that Fidelity be a party to the arbitration concerning Central's alleged breach.
Accordingly, I dissent in part and vote to modify the Appellate Division order to stay arbitration only with respect to Fidelity's liability on the bond.
Order modified, with costs to appellant, in accordance with the opinion herein and, as so modified, affirmed.
NOTES
[*] The demand for arbitration by Parsons against Fidelity in this case was presumably made to avoid the predicament, resulting from lack of notice to and nonparticipation by the surety company in the arbitration proceeding, which was faced by the property owner in Post Corp. v Maryland Cas. Co. (403 Mich 543) when he later sued on a performance bond to recover for the award made in arbitration as agreed to by the owner and the contractor.