The CONTINENTAL GROUP, INC.,
Petitioner–Appellant,

v.

NPS COMMUNICATIONS, INC., and
NPS Corporation,
Respondents–Appellees.

No. 833, Docket 88–7984.

United States Court of Appeals,
Second Circuit.

Argued Feb. 24, 1989.

Decided April 21, 1989.

John H. Reilly, Jr., Dickerson & Reilly, New York City, of counsel, for petitioner-appellant.

Frank H. Penski, Nixon, Hargrave, Devans & Doyle, New York City, of counsel, for respondents-appellees.

Before OAKES, Chief Judge, NEWMAN Circuit Judge, and HAIGHT, District Judge.*

HAIGHT, District Judge:

Petitioner-appellant, The Continental Group, Inc. ("CGI") appeals from an amended order and judgment of the United States District Court for the Southern District of New York, John F. Keenan, *Judge,* confirming an arbitration award in CGI's favor and directing respondent-appellee NPS Communications, Inc. ("Communications") to pay CGI $2,819,668 plus interest. The focus of CGI's appeal is the district court's refusal also to enter judgment for that amount against respondent-appellee NPS Corp. ("Corp."), Communications' parent and guarantor of its performance of the underlying contract.

## BACKGROUND

CGI owns and operates a telecommunication system. By written agreement dated February 22, 1982 Communications bought from CGI the right to use a portion of that system. The first paragraph of that agreement reads as follows:

Agreement made this 22nd day of February 1982, between The Continental Group, Inc. ("CGI"), a New York Corporation, having its principle [*sic*] office at One Harbor Plaza, Stamford, Connecticut, 06904, and NPS Communications, Inc., A New Jersey Corporation ("Manager"), having its principal offices at 200 Park Ave., New York, N.Y., a subsidiary of NPS Corp. ("NPS"), a Delaware Corporation, having its principle [*sic*] office at 1 Harmon Plaza, Secaucus, New Jersey, 07904.

The agreement recites in detail the rights and obligations of CGI and Communications, the latter referred to throughout as "Manager."

Paragraph 6 of the agreement contains an arbitration clause. It provides:

Any disagreement between the Manager and CGI with respect to the interpretation of this agreement or the obligation of the parties hereunder, including Dispute as defined in paragraph 5, shall be determined by arbitration. Such arbitration shall be conducted, upon request of either the Manager or CGI, before three arbitrators (unless the Manager and CGI agree to one arbitrator) designated by the American Arbitration Association and in accordance with the rules of such Association. The arbitrators designated and acting under this agreement shall make their award in strict conformity with such rules and shall have no power to depart from or change any of the provisions thereof. The expense of arbitration proceedings conducted hereunder shall be borne equally by the Manager and CGI. All arbitration proceedings shall be conducted in the City of Stamford, Connecticut.

Paragraph 19 provides:

Performance of this agreement by NPS Communications, Inc. is guaranteed by NPS Corp.

The agreement concludes with this recitation:

IN WITNESS whereof, the parties hereto have set their hands and seals the day and year first above written.

Officers of Communications, Corp. and CGI thereupon added their signatures, in that order.

During performance of the contract a disagreement arose. CGI claimed Commu-

---

* Honorable Charles S. Haight Jr., United States District Judge for the Southern District of New York, sitting by designation.

nications owed about $3,000,000 for services CGI provided to Communications during 1982 and 1983. CGI's counsel sent Communications and Corp. a notice of intention to arbitrate dated November 1, 1983. The "nature of dispute" contained in the notice read:

> The amount owed by the respondents to the claimant for charges incurred by the respondent NPS Communications, Inc. in accordance with the fee schedule set forth in the parties agreement of February 22, 1982. Performance of the agreement by NPS Communications, Inc. was guaranteed by NPS Corp.

CGI's notice to arbitrate provoked litigation responses from Corp. and Communications. Corp. commenced a declaratory judgment action against CGI in the Supreme Court, New York County, seeking a determination that it was no longer bound as guarantor under paragraph 19 of the agreement. Corp. alleged that the agreement between CGI and Communications had terminated, or had been so modified without Corp.'s consent that the guarantee had been discharged; that CGI had waived any right to pursue Corp. as guarantor; and that CGI's prior breaches of the agreement precluded its recovery under both the agreement and the guarantee.

Simultaneously, Communications commenced a special proceeding under Article 75 of the N.Y. CPLR seeking a stay of arbitration between CGI and itself. In that proceeding, Communications relied *inter alia* upon the pendency of an action in the United States District Court for the Southern District of New York (Motley, *Judge*) alleging non-arbitrable federal antitrust claims arising out CGI's conduct in connection with the agreement.

CGI responded to Corp.'s declaratory judgment action by moving for an order compelling Corp. to arbitrate, and a stay of the declaratory judgment action pending arbitration. Corp. cross-moved for a stay of the arbitration pending a determination

of all issues raised in the declaratory judgment action. As for Communications' petition to stay arbitration, CGI cross-petitioned for an order compelling Communications to arbitrate.

Both actions, with their attendant motions and cross-motions, petitions and cross-petitions, were made returnable on December 16, 1983 in Supreme Court, New York County before Justice Seymour Schwartz. Justice Schwartz dealt with all motions before him in an opinion dated August 27, 1984. Since Justice Schwartz's opinion and the order implementing it lie at the heart of the present appeal, we consider them in detail.

Justice Schwartz began his analysis by defining the issues before him as "whether this dispute is arbitrable in whole or in part, and, if so, whether arbitration should be stayed." Slip op. at 3. Quoting paragraph 6 of the agreement and characterizing it as a "broad" arbitration clause, Justice Schwartz refused a stay and left it to the arbitrators to determine which disputes were subject to arbitration and which might not be. He made that direction within the context of Corp.'s contention that its guarantee terminated on May 1, 1983. Justice Schwartz said: "Since at least some charges accumulated before May 1, 1983 the arbitrators must decide which ones are subject to arbitration. This will determine which claims must be adjudicated in Court." Slip op. at 4.[1]

As to Corp. as guarantor of Communications' performance under the agreement, Justice Schwartz reasoned on the authority of *Fidelity and Deposit Company of Maryland v. Parsons & Whittemore Contractors Corp.*, 48 N.Y.2d 127, 421 N.Y.S.2d 869, 397 N.E.2d 380 (1979) that Corp. was not entitled to a stay of arbitration, since "even if the guarantor did not agree to arbitrate, by guaranteeing the liability of a principal who has done so, the guarantor implicitly agrees, for purposes of later de-

---

1. Justice Schwartz left to the federal district court the question of whether arbitration should be stayed on the basis of Communications' antitrust claim against CGI. CGI had moved for a stay of the action in the district court pending arbitration; Communications cross-moved to stay the arbitration. Judge Motley granted CGI's motion and denied Communications' cross-motion in an order dated November 16, 1984. This court affirmed. Dkt. No. 84–7964.

termining its liability, to be bound by the resolution reached in arbitration." Slip op. at 5.

At the conclusion of his opinion, Justice Schwartz directed the parties to settle an order implementing his ruling. The parties submitted cross-orders. What Justice Schwartz did, and what he did not do, in response to them is instructive.

CGI proposed an order which provided: The petition of NPS Communications, Inc. and the motion of NPS Corp. for orders staying arbitration are denied and the cross-motions of the respondent and defendant, The Continental Group, Inc., for an order compelling arbitration and staying the declaratory judgment action instructed by NPS Corp. are granted. Justice Schwartz declined to sign that order. Instead, he adopted with amendments the order submitted by Communications and Corp. We now set forth the text of the order entered by the state court judge; the italicized words were added by the judge in his own hand to the typed order submitted by counsel:

1. The petition of NPS Communications, Inc. and the motion of NPS Corp. for orders staying arbitration are denied without prejudice to any Federal motion to stay the arbitration which has or will be made in the action presently pending between these parties in the United States District Court for the Southern District of New York.

2. The cross-motions of the respondent and defendant, The Continental Group, Inc., for an order compelling arbitration and staying the declaratory judgment action instituted by NPS Corp. are granted *and the declaratory judgment action is stayed* insofar as the declaratory judgment action seeks to adjudicate arbitrable contract claims between NPS Communications, Inc. and The Continental Group. Inc. *And the parties are directed to proceed to arbitrate the claims and issues under dispute in this matter.*

In obedience to this order, CGI, Communications and Corp. appeared through counsel before a panel of arbitrators under the auspices of the American Arbitration Association. In their amended statements of answers and counter-claims before the arbitrators, Communications and Corp. (as respondents) included an allegation by Corp. that "following the termination of the Agreement by CGI effective May 1, 1983, the guarantee of [Corp.] contained in the Agreement terminated." ¶ 3. However, Corp. argued to the arbitrators in its postarbitration hearing brief that since Corp. had not been included in nor agreed to be bound by the arbitration provisions of the agreement, the arbitrators lacked authority to determine Corp.'s rights and liabilities with respect to CGI.

In April 1986 the arbitrators delivered an award which reads in pertinent part as follows:

WE, THE UNDERSIGNED ARBITRATORS, having been designated in accordance with the Arbitration Agreement entered into by the above-named Parties, and dated February 22, 1982, and having been duly sworn and having duly heard the proofs and allegations of the Parties, FIND, as follows:

A. NPS CORP., hereinafter referred to as CORP., is responsible for the debts of its subsidiary, NPS COMMUNICATIONS, INC., hereinafter referred to as RESPONDENT.

We therefore, AWARD as follows:

1. RESPONDENT shall pay to THE CONTINENTAL GROUP, INC., hereinafter referred to as CLAIMANT, the sum of TWO MILLION EIGHT HUNDRED NINETEEN THOUSAND SIX HUNDRED SIXTY EIGHT DOLLARS ($2,819,668.00), together with interest thereon at the rate of 9% per annum from August 10, 1983 to date of payment.

   \*     \*     \*     \*     \*     \*

5. This award is in full settlement of all claims and counterclaims submitted to this arbitration.

The arbitrators' award set the stage for the proceedings in the court below. CGI petitioned the district court pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* for an order confirming the award and

entering judgment "in conformity therewith." Responding to the petition, Communications did not resist confirmation of the award and entry of a money judgment against it; but Corp. contended that the arbitrators' award could not support a money judgment against Corp. The parties then made cross-motions for summary judgment expressing their respective views of the form of judgment the district court should enter; CGI included the alternative request that the district court correct the award pursuant to 9 U.S.C. § 11 "[i]f the Court determines that the Award requires correction to express the true intent of the arbitrators ..."

Judge Keenan declined that invitation, and in a memorandum opinion and order dated May 9, 1988 also declined to enter a money judgment against Corp. In his view, the "relevant case law, the decision of Justice Schwartz and the award itself all indicate that although Corp. is bound by the award judgment should not be entered against it directly." Slip op. at 5. Accordingly the district court entered an order and judgment directing Communications (but not Corp.) to pay CGI the awarded amount of $2,819,668 plus interest.

CGI filed a motion in the district court to amend the judgment and to reargue its motion for summary judgment. CGI accompanied those applications with affidavits executed by the three arbitrators, to whom CGI's counsel had shown copies of Judge Keenan's May 9, 1988 opinion. The arbitrators' affidavits contain identical language, which appears in the margin.[2] CGI used these affidavits to support its contentions that the district court should confirm the "finding" in the first paragraph of the Arbitrators' award, to the effect that Corp. was responsible for the debts of Communications; and thereupon confirm the "award" so as to require a money judgment against Corp. as well as against Communications. CGI persuaded Judge Keenan to amend his order so as to provide: "Both the Finding and Award in the arbitration decision are hereby confirmed." Amended order dated November 3, 1988. But the district court refused to amend its judgment so as to require Corp., as well as Communications, to pay the awarded amount to CGI. This appeal followed.

## DISCUSSION

■ Dispute resolution by arbitration is and must be consensual. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *McAllister Bros. v. A & S Transp. Co.*, 621 F.2d 519, 522 (2d Cir.1980), *quoting United Steelworkers v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). New York law is to the same effect. "[P]arties to a commercial transaction 'will not be held to have chosen arbitration as the forum for the resolution of their disputes in the absence of an express, unequivocal agreement to that effect; absent such an explicit commitment neither party may be compelled to arbitrate.'" *Matter of Marlene Industries Corp. v. Carnac Textiles, Inc.*, 45 N.Y.2d 327, 333, 408 N.Y. S.2d 410, 413, 380 N.E.2d 239, 242 (1978), *quoting Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.]*, 42 N.Y.2d 509, 512, 399 N.Y.S.2d 189, 191, 369 N.E.2d 746, 748 (1977). *See also Fidelity & Deposit Company of Maryland v. Parsons & Whittemore Contractors Corp., supra.*

■ Under both federal practice, 9 U.S. C. § 4, and state practice, N.Y. CPLR § 7503(a), a party aggrieved by another's failure to arbitrate pursuant to contract may ask a court to compel arbitration.

---

**2.** "We the undersigned served as arbitrators in the arbitration between the Continental Group, Petitioner and NPS Communications, Inc. and NPS Corp., respondents (American Arbitration Association Case No. 13–180–0709–83).

We have read the Memorandum Opinion and Order of John F. Keenan, United States District Judge, rendered May 9, 1988 in this proceeding.

It was the intent of all members of the panel that the Paragraph A, of the Award document which designates that NPS Corp. is responsible for the debts of NPS Communications, Inc. should rightly be part of the award."

CGI made that request of Justice Schwartz in the case at bar. Where a court makes an order of reference to arbitration, the arbitrators render an award, and application is thereafter made to a court to confirm the award and enter judgment upon it, the questions of who arbitrated which issues and to what end must be viewed through the lens of the court's order compelling arbitration in the first place. In other words, the issue turns upon the scope of the court's order directing the parties to proceed to arbitration. *Philippine Bulk Shipping v. International Minerals & Chemical Corp.*, 376 F.Supp. 654, 655 (S.D. N.Y.1973) (Weinfeld, J.).

Applying these principles to the case at bar, we affirm the district court's judgment. Justice Schwartz's order directing arbitration, both in what it does and what it does not do, makes it crystal clear that his order did not empower the arbitrators to resolve the issue posed by Corp.'s state court declaratory judgment action, namely, whether by reason of prior events Corp.'s guarantee of Communication's performance had terminated and was no longer enforceable. That issue the state court did not refer to the arbitrators; the court specifically reserved it for judicial determination. No other reasonable construction is possible of the court's order, which constituted a limited reference to arbitration, and a conversely limited stay of the judicial proceedings. Thus Justice Schwartz's order directed that arbitration be compelled, and the declaratory judgment action stayed, *only* "insofar as the declaratory judgment action seeks to adjudicate arbitrable contract claims between N.P.S Communications, Inc. and the Continental Group, Inc." When one contrasts the limited provisions of the order the Judge entered with the broad provisions of CGI's counter-order which the judge rejected, the scope of his reference to the arbitrators becomes plain enough.

Moreover, that construction is consistent—and CGI's construction would be inconsistent—with the New York Court of Appeal's decision in *Fidelity, supra,* which Justice Schwartz cited in his opinion. If the scope of Justice Schwartz's order compelling arbitration required further clarification, it is found in his reliance upon *Fidelity*. In *Fidelity*, a surety company incorporated in its performance bond a subcontract containing a broad arbitration clause. Disputes having arisen between the subcontractor and the general contractor, the latter served a demand for arbitration upon both the subcontractor and the surety company. The surety moved to stay arbitration. The Court of Appeals said of the contractual scheme:

As to disputes between the general contractor and the subcontractor concerning failure of performance by the latter, those two parties expressly agreed that their differences should be submitted to arbitration for resolution. By contrast, there was no agreement on the part of any party that controversies arising as to rights and obligations under the terms of the performance bond would be submitted to arbitrate.

48 N.Y.2d at 132, 421 N.Y.S.2d at 871, 397 N.E.2d at 382.

Notwithstanding the latter factor, the court held that the surety company was not entitled to an order staying the arbitration. Although the surety company did not agree to participate in any arbitration, it did accept the agreement of the general contractor and the subcontractor to resolve disputes between them by arbitration. In those circumstances, the court viewed the surety company as bound by an implicit agreement "that for purposes of later determining its liability under its performance bond, it would accept and be bound by the resolution reached in the arbitration forum of any dispute between the general contractor and the subcontractor." 48 N.Y.2d at 132–33, 421 N.Y.S.2d at 872, 397 N.E.2d at 382. Thus an arbitration award adverse to the subcontractor could not be relitigated by its surety company; and that being so, the surety company was not entitled to a stay of arbitration of the underlying dispute. *Ibid.*

Although the *Fidelity* court denied the surety company's motion to stay arbitration for the reasons stated, the court was careful to limit the company's obligations

to arbitrate under the contractual scheme. Thus the Court of Appeals also said:

> "In defining the agreement made by the surety company it is accurate to say that it cannot be held to have agreed to participate in arbitration proceedings with respect to any dispute whatsoever. Certainly there is no language in the performance bond on which to base any argument that it was obligated to submit disputes arising under its performance bond (as distinguished from disputes arising under the subcontract) to resolution by arbitration. The arbitration clause in the subcontract provided only for arbitration of disputes arising under that contract."

48 N.Y.2d at 132, 421 N.Y.S.2d at 871, 397 N.E.2d at 382.

To resolve the case at bar, it is not as important for us to divine what the New York Court of Appeals meant in *Fidelity* as it is to understand the scope of Justice Schwartz's order directing arbitration. But Justice Schwartz, who cited *Fidelity* in his opinion, clearly had its rationale in mind; and his order tracks that rationale. Under that order Corp.'s action for a declaration that it is no longer bound by its guarantee remains for resolution by the state court. The state court did not regard Corp. as contractually bound to arbitrate those issues: hence its rejection of CGI's cross-order, and the court's adoption of limiting language staying the declaratory judgment action only insofar as it sought to adjudicate arbitrable contract claims between Communications and CGI. We read Justice Schwartz's order directing arbitration to exclude the issue of Corp.'s continuing liability under its guarantee. Whether

or not Justice Schwartz properly applied New York law in making that order, thus construed, is not before us. CGI took no appeal from it in the state courts.[3]

No act or declaration subsequent to the state court's order alters its effect. Corp. argued to the arbitrators, prior to the award, that the arbitrators lacked jurisdiction to decide the enforceability of the guarantee. Corp. cannot therefore be analogized, as CGI requests, to an indemnitor who "accepts" a vouching-in opportunity to defend a claim "and is of course bound by the result." *SCAC Transport (USA) Inc. v. S.S. DANAOS*, 845 F.2d 1157, 1161 (2d Cir.1988). In point of fact, Corp. *is* bound under *Fidelity* by the arbitrators' award in favor of CGI and against Communications in the sense that the merits of those disputes cannot be relitigated. But Corp. did not consent to arbitral resolution of its obligations as guarantor.

The arbitrators' affidavits, uniformly reciting their intent that the designation of Corp. as "responsible for the debts" of Communications "should rightly be part of the award", does not change the result. Even if the arbitrators meant to say that Corp., as well as Communications, should pay the sums awarded to CGI, they cannot inflate their authority beyond the boundaries of the state court's order of reference. Indeed, an arbitrators' award directing Corp. to pay CGI would have been subject to challenge as in excess of their powers. 9 U.S.C. § 10(d).

Since the district court correctly construed the limited scope of the state court's order directing arbitration, its judgment was proper. The arbitrators derived their

---

**3.** The issue before the district court and us is the scope of the state court's order directing arbitration, not whether it was correct. But we regard the order as correct. CGI, observing that Corp. signed the agreement as one of its "parties", stresses a phrase in the first sentence of paragraph 6: "Any disagreement between the Manager [Communications] and CGI with respect to the interpretation of this agreement or the obligations of *the parties* hereunder, including Dispute as defined in paragraph 5, shall be determined by arbitration." This language, when viewed in context, falls far short of that "express, unequivocal agreement" by Corp. to

arbitrate its obligations as guarantor that New York law requires. *Marlene Industries Corp., supra.* The "parties" embraced by paragraph 6 are identified in its first sentence: the "Manager", i.e. Communications, and CGI. Paragraph 6 goes on to vest Communications and CGI (but not Corp.) with the power to request arbitration and agree upon the arbitrator; it casts arbitration expenses "equally" upon Communications and CGI (not Corp.). The preamble to the agreement recites that it is between CGI and Communications. An agreement by Corp. to arbitrate its obligations under the guarantee cannot be fashioned out of such stuff as this.

powers from the state court's order. That authority did not extend to disputes concerning Corp.'s continuing obligations as guarantor of Communications' performance. Accordingly the arbitrators' award cannot operate as the basis for a money judgment against Corp. The judgment of the district court is AFFIRMED.