**Thomas CONWAY, Plaintiff,**

v.

**ICAHN & CO., INC., Defendant.**

**No. 89 Civ. 3995 (RJW).**

United States District Court,
S.D. New York.

June 14, 1990.

---

5. The liability of Alliance Brokerage Corporation to Defendants is not addressed herein.

S.W. Azrillant, Jack Minoff, New York City, for plaintiff.

Florence M. Peterson, Mt. Kisco, N.Y., for defendant.

## MEMORANDUM DECISION

ROBERT J. WARD, Senior District Judge.

Defendant Icahn & Co., Inc. ("Icahn") has moved, pursuant to Rule 56, Fed.R.Civ. P., for partial summary judgment dismissing count III of the complaint, which alleges a violation of the federal securities laws. In addition, Icahn seeks an order compel-

ling arbitration of the remaining claims, all of which are based upon state law, and of the federal claim in the event it is not dismissed. In a conference call on March 9, 1990, chambers notified the parties that the Court had determined to adjourn that portion of the motion seeking summary judgment on the federal claim, pending completion of discovery. However, at defendant's request, that part of the motion seeking to compel arbitration was severed for immediate decision. For the reasons that follow, the Court denies defendant's motion to compel arbitration of plaintiff's claims.

## BACKGROUND

In this action, which stems in large part from the precipitous fall in the stock market that occurred on October 19, 1987—"Black Monday"—plaintiff Thomas Conway ("Conway") seeks damages for losses in his margin account that occurred when defendant, his broker (the "introducing broker"), executed certain open buy orders and then sold off stock in plaintiff's account to meet the margin call of Cowen & Co. ("Cowen"), the "clearing broker,"[1] which is not a party to this action. Plaintiff claims that as a result of his inability to reach defendant's offices by telephone during the crucial period, and defendant's failure promptly to notify him of the transactions executed on behalf of his account and of the resulting under-margining of his account, he sustained severe losses and incurred substantial tax liabilities.

The relevant facts are largely undisputed. The complaint reveals that plaintiff opened his securities account with Icahn in 1981. According to plaintiff, as an inducement to him to open and maintain this account, defendant made certain representations to him. In particular, plaintiff claims that he was told that: (1) Icahn would confirm, by same-day telephone communication, all transactions executed in plaintiff's account; (2) Icahn would con-

---

**1.** Clearing brokers typically perform mechanical "back office" type functions related to the clearance and settlement of transactions in the accounts of an introducing broker's customers. In the instant case, the respective responsibili-

ties and functions of Icahn and Cowen were set out in a Clearing Agreement entered into by them. *See* Exhibit B to Affidavit of Florence M. Peterson, filed November 11, 1989.

firm, by same-day or next-day written communication, all transactions executed in plaintiff's account; (3) Icahn would permit plaintiff to maintain less than a thirty percent margin, and would notify him in the event that deposits were necessary to comply with any margin requirements; and (5) Icahn's offices would be open during securities trading hours, and plaintiff would be able to communicate his transaction requests to his account representative by telephone.

In connection with opening his account with Icahn, plaintiff signed a Customer Agreement (the "Agreement") on a Cowen form.[2] This agreement contains the following clause:

... Any controversy arising out of or relating to my accounts, to transactions with you for me or to this agreement or the breach thereof, shall be settled by arbitration in accordance with the rules, then in effect, of the National Association of Securities Dealers, Inc. or the Boards of Directors of the New York Stock Exchange, Inc. as I may elect. If I do not make such election by registered mail addressed to you at your mail office within 5 days after demand by you that I make such election, then you may make such election.... The execution of this agreement does not waive my rights to bring suit on claims rising [sic] under the federal securities laws.

Exhibit B to Affidavit of Florence M. Peterson, filed November 16, 1989, at ¶ 13. Defendant is nowhere named or mentioned in the Agreement.

On October 19, 1987, at approximately 10:30 in the morning, plaintiff telephoned Barry M. Ferrari ("Ferrari") at Icahn's midtown Manhattan branch office where plaintiff's account was located, and placed open buy orders for twelve different securities. Also outstanding at that time were several other open buy orders which had previously been communicated to defendant by Conway. As of the time of plaintiff's call, all of these buy orders were priced below the current market prices for the various stocks.

A few hours later, at approximately 12:45 in the afternoon, Conway had a change of heart with respect to the aforementioned buy orders and attempted to reach Ferrari by telephone in order to cancel them. The lines, however, were continuously busy and plaintiff was unable to get through to defendant's office.

According to the complaint and plaintiff's papers, over the ensuing two weeks Conway was ill and did not leave his home. Conway claims that, during that time period, he attempted to telephone defendant's office three or four times per day but was never able to get through due to a constant busy signal on Icahn's line, nor was he contacted by defendant with respect to any transactions occurring in his account or any margin requirements. On Friday, October 30, 1987, plaintiff was admitted as a patient at St. Luke's/Roosevelt Hospital in New York.

Early in the morning on Monday, November 2, plaintiff finally succeeded in reaching Ferrari at defendant's midtown branch office. Telephoning from his hospital room, plaintiff questioned Ferrari concerning the status of his account and of the outstanding buy orders previously transmitted by plaintiff to defendant. He claims that Ferrari stated that he did not know the status of the account or the buy orders, and that any transactions would be reported in plaintiff's forthcoming October 1987 monthly statement. Plaintiff gave Ferrari the telephone number of his hospital room, and asked that he contact him should he obtain any of the requested information. According to plaintiff, neither Ferrari nor any other employee or representative of Icahn telephoned him in this regard. Plaintiff was discharged from the hospital on November 4.

Plaintiff continued to telephone Ferrari regularly during the week of November 2

---

2. Under a Clearing Agreement entered into between Icahn and Cowen (the "Clearing Agreement"), Icahn was required to furnish Cowen with executed Customer Agreements on Cowen's forms in connection with all introduced accounts. *See* Exhibit B to Affidavit of Florence M. Peterson, filed November 16, 1989.

through November 6, but was told only that Icahn's downtown office was not providing any information to Ferrari and that plaintiff should await his October statement. When plaintiff telephoned Icahn's downtown office on November 3 and 4, however, he was told that all inquiries regarding his account were required to be made through his account representative and that he should not telephone the downtown office.

On Saturday, November 7, plaintiff "collected his mail,"[3] which included several items of correspondence from defendant. In particular, plaintiff received his October 1987 monthly statement, written confirmations of various purchases[4] and sales[5] that occurred in his account between October 19 and October 28, 1987, and a "margin call" requesting immediate deposit into plaintiff's account of $100,000. Plaintiff claims that these items represented the first communications he had received from defendant regarding the status of his account and the need for additional margin.

According to plaintiff, had defendant timely confirmed to him the occurrence of the purchase transactions he could have prevented the sell-off in his account, since he had sufficient cash or liquid assets to meet any margin demand. In addition, plaintiff claims he had previously informed Ferrari of this fact precisely for the purpose of preventing a sell-off in the case of a market break.

On the following Monday, November 9, plaintiff personally visited Ferrari at defendant's uptown office and complained to him about his inability to reach defendant on October 19 and thereafter, defendant's failure to confirm the transactions earlier, and the sell-outs that occurred in plaintiff's account on October 27 and 28. Plaintiff gave Ferrari a check for $100,000—the amount of the margin demand received by plaintiff on November 7. According to plaintiff, Ferrari:

> stated to [him] that he could not understand why any margin call had ever been made and that whatever had happened had been done by defendant's "downtown office" without any notice to him.

Affidavit of Thomas Conway, filed December 4, 1989, at 10.

Plaintiff states that Ferrari urged him not to withdraw his account until he received his November monthly statement, since the sell-out transactions did not appear on the October statement. When the November statement arrived showing these transactions, however, plaintiff claims that Ferrari again blamed defendant's "downtown office" and insisted that "defendant was good for the damage." *Id.*

The complaint contains nine separate claims against Icahn. No claim is made against the clearing broker, Cowen. Defendant, in the portion of its motion under consideration here, seeks to invoke the arbitration clause in the Agreement to compel arbitration of all of plaintiff's claims against it.

## DISCUSSION

A court faced with a motion to compel arbitration under the Federal Arbitration Act, codified at 9 U.S.C. §§ 1–14, must first "determine whether the parties agreed to arbitrate." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir.1987) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct.

---

**3.** The Court, concerned about the ambiguity of this phrase in the complaint, held a telephone conference with counsel for both parties on March 6, 1990. During that conference, counsel for plaintiff stated that when plaintiff "collected his mail" on November 7 he for the first time picked up all mail that had come between October 31 and that date. Thus, as counsel explained, the mail that plaintiff collected on November 7 may have been delivered as early as October 31.

**4.** The confirmation slips revealed that on October 19 all of the buy orders transmitted by plaintiff that morning had been executed, and that on that day and subsequent thereto all previously transmitted open buy orders had been executed.

**5.** The confirmation slips revealed that on October 19 plaintiff had sold 2400 shares of Bank America Preferred, on October 27 a total of eight "sell-out" orders had occurred in plaintiffs account, and on October 28 a total of sixteen "sell-out" orders occurred in his account.

3346, 87 L.Ed.2d 444 (1985)). "Because arbitration is a matter of contract, a party cannot be required to submit to arbitration any dispute with a party with whom he has not agreed to arbitrate." *Kelly v. Robert Ainbinder & Co.*, Fed.Sec.L.Rep. (CCH) ¶ 94,963, 1990 WL 26809 (S.D.N.Y. March 8, 1990); *Continental Group, Inc. v. NPS Communications, Inc.*, 873 F.2d 613, 617 (2d Cir.1989).

Although not referred to by name in the Agreement containing the arbitration clause, defendant argues that the Agreement should be interpreted to apply to Icahn. Ordinary contract principles apply to the determination whether plaintiff and defendant have or have not agreed to arbitrate their disputes. *See Ahn v. Rooney, Pace Inc.*, 624 F.Supp. 368, 369 (S.D.N.Y. 1985). Defendant's argument that it is included within the term "you" in the Agreement apparently is based upon the fact that it was Icahn which provided the form to plaintiff, that the Clearing Agreement between Icahn and Cowen required Icahn to obtain clients' signatures on Cowen forms, and that other documents upon which plaintiff's claims against Icahn are based were also on Cowen forms.[6]

These circumstances are insufficient to support Icahn's argument that it was a party to the Agreement. "While the parties need not be named formally, there can be no enforceable agreement unless the parties can be identified with reasonable certainty." *Antinoph v. Laverell Reynolds Securities, Inc.*, Fed.Sec.L.Rep. ¶ 94,765 (CCH), 1989 WL 67332 (E.D.Pa.1989) (citing 4 Williston on Contracts (3d ed.) § 569, at 39). Here, Icahn was not mentioned by name or otherwise referred to in the Agreement, and it appears from a contextual reading of the Agreement that the term "you" refers to Cowen. Therefore, defendant may not enforce the arbitration clause against plaintiff based upon its being a party to the Agreement.

There remains the possibility, however, that defendant could enforce the Agreement between Cowen and plaintiff if it could demonstrate either that it was an agent of Cowen, *see Nesslage v. York Securities, Inc.*, 823 F.2d 231, 233–34 (8th Cir.1987); *Okcuoglu v. Hess, Grant & Co.* 580 F.Supp. 749, 750–52 (E.D.Pa.1984), or that it was a third party beneficiary of the Agreement. *See Cauble v. Mabon Nugent & Co.*, 594 F.Supp. 985, 990–92 (S.D.N.Y. 1984); *Nesslage v. York Securities, Inc., supra*, 823 F.2d at 233–34. Although defendant does not expressly argue that it was either an agent of Cowen, or a third party beneficiary of the Agreement, it cites the above cases in support of its assertion that it is entitled to invoke the arbitration provision of the Agreement against plaintiff.

The overwhelming weight of authority in this district and in other jurisdictions rejects attempts by introducing brokers to enforce arbitration clauses contained in customer agreements between their clients and clearing brokers. *See Kelly v. Robert Ainbinder & Co.*, Fed.Sec.L.Rep. (CCH) ¶ 94,963 (S.D.N.Y.1990); *Church v. Gruntal & Co.*, 698 F.Supp. 465 (S.D.N.Y.1988); *Lester v. Basner*, 676 F.Supp. 481 (S.D.N.Y.1987); *Ahn v. Rooney, Pace Inc.*, 624 F.Supp. 368 (S.D.N.Y.1985); *Mowbray v. Moseley, Hallgarten, Estabrook & Weeden, Inc.*, 795 F.2d 1111 (1st Cir.1986); *Wilson v. D.H. Blair & Co.*, 731 F.Supp. 1359 (N.D.Ind.1990); *Antinoph v. Laverell Reynolds Securities, Inc.*, Fed.Sec.L.Rep. (CCH) ¶ 94,765, 1989 WL 67332 (E.D.Pa. 1989); *Morgan v. Kobrin Securities, Inc.*,

---

**6.** Defendant also states that, because ¶ 14 of the Agreement relates to confirmations mailed by "you" to "me" ("me" is understood by all to refer to plaintiff), the "you" must refer to Icahn since "defendant, not Cowen, mailed the space confirmations to plaintiff." Letter to the Court from defendant's counsel Florence M. Peterson, dated March 23, 1990. In the first place, the Court does not know what "space" confirmations are, or whether they are distinct from the confirmations of purchases and sales with which the parties thus far have been concerned. In addition, the Clearing Agreement provides that confirmations will be mailed to clients of Icahn by Cowen, with copies sent to Icahn. Thus, it is reasonable to infer that the Customer Agreement reflected that function of the clearing broker. The Court notes, however, that if indeed Icahn had no part in the mailing of the confirmations, that fact would be relevant to plaintiff's ability to sustain his burden on the substantive claims.

649 F.Supp. 1023 (N.D.Ill.1986); *Finlay v. Moseley, Hallgarten, Estabrook & Weeden, Inc.,* No. 85 C 7205, slip op., 1987 WL 5237 (N.D.Ill. January 5, 1987) (avail. on Lexis at 1987 U.S.Dist. LEXIS 68). *See also Asset Allocation & Management Co. v. Western Employers Ins. Co.,* No. 88 C 4287, slip op., 1988 WL 139247 (N.D.Ill. December 22, 1988) (avail. on Lexis at 1988 U.S.Dist. LEXIS 14531).

As noted by some of these courts, the usual relationship between introducing broker and clearing broker does not fit easily within an agency framework. Indeed, one court has noted that "[e]ven without an express denial of a principal and agent relationship, courts have held that one does not exist between the introducing and clearing brokers." *Lester v. Basner, supra,* 676 F.Supp. at 484 (citing *Ahn v. Rooney, Pace Inc., supra,* 624 F.Supp. 368); *Morgan v. Kobrin Securities, Inc., supra,* 649 F.Supp. at 1032–33. Because "there can be no agency relationship where the alleged principal holds no right of control over the alleged agent," *id.* at 370, there must be some evidence to support a finding of subservience on the part of the alleged agent.

The facts at this stage of the instant proceedings do not reveal any such agency relationship between Cowen and Icahn. The Clearing Agreement expressly provides that Cowen is not liable for any dispute arising out of the acts or omissions of Icahn, thus underscoring the separateness of the two firms. *See Ahn v. Rooney, Pace Inc., supra,* 624 F.Supp. at 371. Thus, defendant may not enforce the arbitration agreement contained in the Agreement under an agency theory.

Similarly, the facts thus far presented fail to reveal any evidence that the parties to the Agreement intended to confer a benefit upon Icahn so as to give it third party beneficiary status. *See Mowbray v. Moseley, Hallgarten, Estabrook & Weeden, supra,* 795 F.2d at 1117 (crux of third party beneficiary analysis is the intent of the parties); *Kelly v. Ainbinder & Co., supra,* slip op. (no extrinsic evidence suggested to show intent to benefit introducing broker

as third party beneficiary); *Lester v. Basner, supra,* 676 F.Supp. at 484–85 (since no intent to make defendants third party beneficiaries shown, they were merely incidental beneficiaries). Defendant therefore cannot enforce the Agreement based upon its alleged status as a third party beneficiary of the Agreement.

CONCLUSION

For the foregoing reasons, that portion of defendant's motion seeking to compel arbitration of any or all of plaintiff's claims is denied. The parties are directed to complete discovery on or before July 6, 1990, and to serve and file any final submissions concerning defendant's motion for summary judgment on or before July 20, 1990. In connection with these final submissions, the parties are directed to focus particularly upon the issue of scienter on the part of defendant.

It is so ordered.