# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 99-4319

———————

AgGrow Oils, L.L.C.,

    Plaintiff - Appellee,

v.

National Union Fire Insurance
Company of Pittsburgh, PA,

    Defendant - Appellant,

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Appeal from the United States
District Court for the
District of North Dakota.

———————

Submitted:  November 15, 2000

Filed:  March 7, 2001

———————

Before LOKEN, LAY, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

———————

LOKEN, Circuit Judge.

National Union Fire Insurance Company ("National") issued a performance bond guaranteeing the obligations of T.E. Ibberson Company ("TEI") under a contract between TEI and AgGrow Oils, L.L.C. ("AgGrow"). AgGrow filed this action against National to recover on the bond, claiming that TEI was in default of its contractual obligations. National moved to stay the litigation pending mandatory arbitration under the TEI/AgGrow contract, which was incorporated by reference in National's bond. The district court denied a stay, and National appeals. We agree with the district court

there is no arbitration agreement between AgGrow and National mandating a stay under section 3 of the Federal Arbitration Act, 9 U.S.C. § 3. However, we conclude the district court should reconsider whether to stay this action, at least in part, because arbitration of the underlying contract dispute between AgGrow and TEI is now pending. Accordingly, we affirm in part and remand.

## I. Background.

AgGrow was established in 1996 to construct and operate a plant to process oilseeds grown by farmer-investors into edible and industrial oils. In May 1997, AgGrow and TEI entered into a Construction Contract in which TEI agreed to design and build the processing facility near Carrington, North Dakota, and AgGrow agreed to pay TEI a "not to exceed" price of $7,758,281. TEI purchased the processing equipment from Anderson International Corporation ("Anderson"). A TEI subsidiary, Ibberson Engineering, provided engineering services on the project. Consistent with prior direct dealings between AgGrow and Anderson, TEI guaranteed that the completed plant would process 200 tons of five specified oilseeds per day, and that the "expeller cake" would have a residual oil content of five to eight percent. National issued a performance bond binding National "to the Owner [AgGrow] for the performance of [TEI's obligations under] the Construction Contract, which is incorporated herein by reference."

After completion, the plant did not meet TEI's performance guarantees, and AgGrow notified TEI and National of its intent to claim a default and seek relief under the bond. AgGrow commenced this action in February 1999, suing National to recover on the bond and for bad faith, Ibberson Engineering for negligence, and Anderson for negligence and breach of warranty. AgGrow did not sue TEI. Ibberson Engineering cross claimed against Anderson, and Anderson cross claimed against Ibberson Engineering and National. Some months later, TEI filed an arbitration claim against

-2-

AgGrow under the arbitration provision in the Construction Contract;[1] AgGrow counterclaimed for damages, including damages for TEI's alleged breach of the performance guarantees. TEI also sued Anderson in the District of Minnesota seeking indemnity for any liability to AgGrow. That action was transferred to the District of North Dakota and has been consolidated with this action.

National moved to stay AgGrow's lawsuit, arguing that AgGrow is obligated to arbitrate its claim under the performance bond because the bond expressly incorporated by reference the Construction Contract, including its arbitration provision. AgGrow opposed that motion, arguing the bond itself contains no agreement to arbitrate and instead provides that "[a]ny proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located . . . within two years after the Surety refuses or fails to perform its obligations under this Bond." The district court initially denied National's motion for a mandatory stay, concluding that AgGrow's claim on the bond is not arbitrable because "the bond literally incorporates only AgGrow's promise to arbitrate with TEI; it does not . . . encompass mandatory arbitration with National." Four months later, after the parties advised that Anderson refused to arbitrate, and that no arbitration proceedings had been commenced,[2] the district court denied a discretionary stay. National appeals. We have jurisdiction to review this interlocutory order. See 9 U.S.C. § 16(a)(1)(A); In re Piper Funds, Inc., 71 F.3d 298, 300 (8th Cir. 1995).

---

[1]Section 4.5 of the Construction Contract provides that "[a]ny controversy or Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association."

[2]In fact, TEI filed its claim in arbitration one month before the district court ruled. As we shall explain, this was a critical fact that the parties should have immediately brought to the district court's attention.

## II. Is National Entitled to a Mandatory Stay?

Section 3 of the Federal Arbitration Act provides that the district court *shall* stay the trial of an action brought "upon any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT & T Techs., Inc. v. Communications Workers, 475 U.S. 643, 648 (1986) (quotation omitted). "We apply ordinary state law contract principles to decide whether parties have agreed to arbitrate a particular matter," giving "healthy regard for the federal policy favoring arbitration." Keymer v. Management Recruiters Int'l, Inc., 169 F.3d 501, 504 (8th Cir. 1999) (quotation omitted). The question of arbitrability is for the court, not the arbitrator. See McLaughlin Gormley King Co. v. Terminix Int'l Co., 105 F.3d 1192, 1193-94 (8th Cir. 1997).

The issue is whether AgGrow and National agreed to arbitrate AgGrow's claim on the performance bond. That issue turns on the meaning of the provision in the bond incorporating by reference the Construction Contract between AgGrow and TEI. Applying North Dakota law, the first question is whether the incorporation provision is ambiguous, a question of law we must decide from the four corners of the written agreement. See Burk v. Nance Petroleum Corp., 10 F.3d 539, 542 (8th Cir. 1993). As a general matter of contract law, an incorporation clause is effective only when the "provision to which reference is made has a reasonably clear and ascertainable meaning." J.S. & H. Constr. Co. v. Richmond County Hosp. Auth., 473 F.2d 212, 215 (5th Cir. 1973). Without question, incorporation of the Construction Contract clarified the performance obligations of TEI that National as surety undertook to guarantee. See Hollerman Mfg. Co. v. Standard Accident Ins. Co., 239 N.W. 741, 744-45 (N.D. 1931) (unpaid supplier may sue on bond issued in favor of owner and incorporating builder's contractual obligation to pay suppliers); accord Home Indem. Co. v. F.H. Donovan Painting Co., 325 F.2d 870, 874 (8th Cir. 1963). However, it is less clear that the

-4-

incorporation clause reflected an intent by AgGrow and National to arbitrate *their* disputes under the bond -- that intent is not clearly expressed, and it seems to be negated by the bond provision referring to the judicial resolution of disputes and by the provision in the Construction Contract that it "not be construed to create a contractual relationship of any kind . . . between any persons or entities other than [AgGrow and TEI]." We conclude the incorporation clause is ambiguous on the issue of arbitrability, that is, "rational arguments can be made in support of contrary positions as to the meaning of the language in question." Johnson v. Mineral Estate, Inc., 343 N.W.2d 778, 780 (N.D. 1984).

When a contract is ambiguous, extrinsic evidence may be considered to determine the parties' intent. See Case Int'l Co. v. T.L. James & Co., 907 F.2d 65, 67 (8th Cir. 1990) (testimony of drafter considered in finding that prime contract's arbitration clause was not incorporated by reference into a subcontract). In this case, we have no extrinsic evidence regarding the parties' intent on the arbitrability question. An ambiguous contract may also be explained "by reference to the circumstances under which it was made and the matter to which it relates." N.D. CENT. CODE § 9-07-12. In general, a performance bond provides recourse to an obligee (AgGrow) against a secondary obligor (National, the surety) in the event the principal obligor (TEI) fails to perform the underlying obligation. See RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTY § 1 (1996). In defending a claim on the bond, the surety may raise nearly all defenses available to the principal obligor, plus defenses unique to the surety, such as actions by the obligee that impair the surety's position or release the principal obligor. Id. §§ 34, 37-47. When the surety has performed the underlying obligation or has discharged the principal obligor by settling with the obligee, the surety usually has a right to be reimbursed by the principal obligor. Id. §§ 22-24.

National argues that, as surety, it "steps into the shoes" of TEI and may compel AgGrow to arbitrate its claim on the bond under the arbitration provision in the Construction Contract. In support of its position, National marshals an impressive

array of cases from other jurisdictions in which a bond provision incorporating the underlying contract was held to include the contract's arbitration provision and to justify a stay of litigation on the bond. Some of these cases are not quite on point, either because the surety was not seeking the stay, or because the stay was granted pending arbitration between the parties to the underlying contract, not between the bonding company and the obligee.[3] Whether a lawsuit on the bond should be stayed while the obligee and the principal obligor arbitrate the underlying performance dispute is a different question than whether the obligee and the surety have separately agreed to arbitrate any disputes under the bond. See United States v. Bregman Constr. Corp., 256 F.2d 851, 854 (7th Cir. 1958).

Some of the cases cited by National have expressly held that an incorporation clause in the bond gave either the surety, or the obligee making a claim on the bond, the right to arbitrate the bond claim, as well as to stay the pending court action.[4] To the same effect, another case held that an incorporation clause gave the surety a right to participate in pending arbitration between the principal obligor and the obligee. See Firemen's Ins. Co. v. Edgewater Beach Owner's Ass'n, 1996 WL 509720, at *3 (N.D. Fla. June 25, 1996). But these cases do not discuss the significance of construing the incorporation clause as an express agreement to arbitrate between the obligee and the bonding company. The impact of such an agreement can be far-reaching. For example, it would permit the surety to compel arbitration of a claim on the bond when the

_____

[3]See Maxum Founds., Inc. v. Salus Corp., 779 F.2d 974, 976-77 (4th Cir. 1985); J & S Constr. Co. v. Travelers Indem. Co., 520 F.2d 809, 809-10 (1st Cir. 1975); accord J.S. & H. Constr. Co., 473 F.2d at 213-14.

[4]See Commercial Union Ins. Co. v. Gilbane Bldg. Co., 992 F.2d 386, 386-89 (1st Cir. 1993); United States Fid. & Guar. Co. v. West Point Constr. Co., 837 F.2d 1507, 1507-08 (11th Cir. 1988); Exchange Mutual Ins. Co. v. Haskell Co., 742 F.2d 274, 275-76 (6th Cir. 1984); accord Cianbro Corp. v. Empresa Nacional de Ingenieria Y Technologia, S.A., 697 F. Supp. 15, 19 (D. Me. 1988).

principal obligor is bankrupt or out of business, even though no party to the underlying contract wished to arbitrate performance issues. It would also permit the obligee to compel an unwilling surety to arbitrate its unique defenses, such as whether the obligee had impaired the surety's position or released the principal obligor. Mindful of the fundamental principle that "[a]rbitration under the [Federal Arbitration] Act is a matter of consent, not coercion," Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57 (1995), we are unwilling to construe an incorporation clause whose obvious purpose was to clarify the extent of the surety's secondary obligation as also reflecting a mutual intent to compel arbitration of all disputes between the surety and the obligee under the bond. Like the district court, we conclude there was no such agreement to arbitrate. Therefore, National is not entitled to a mandatory stay under section 3 of the Act. Accord Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship, 695 A.2d 153, 156-57 (Md. 1997); In re Fidelity & Deposit Co. of Md. v. Parsons & Whittemore Contractors Corp., 397 N.E.2d 380, 381-83 (N.Y. 1979).

### III. Is National Entitled to a Discretionary Stay?

Though National is not entitled to compel arbitration of AgGrow's claim on the bond, the district court has discretion to stay "third party litigation [that] involves common questions of fact that are within the scope of the arbitration agreement" in the Construction Contract. Contracting Northwest, Inc. v. City of Fredericksburg, 713 F.2d 382, 387 (8th Cir. 1983); accord American Home Assurance Co. v. Vecco Concrete Constr. Co., 629 F.2d 961, 964 (4th Cir. 1980).[5] As these cases recognized,

---

[5]Both Contracting Northwest and Vecco concluded that 9 U.S.C. § 3 authorizes a stay in favor of a non-party to the arbitration agreement. In IDS Life Ins. Co. v. Sunamerica, Inc., 103 F.3d 524, 530 (7th Cir. 1996), the Seventh Circuit concluded that only a party to the arbitration agreement may be granted a stay under § 3, but other parties may be entitled to a stay "under the doctrine of abstention applicable to parallel proceedings in judicial and arbitral fora." All three decisions recognized there is discretion to stay a lawsuit when a parallel arbitration proceeding should have priority.

a discretionary stay may well be needed to further the strong federal policy favoring agreements to arbitrate. Here, for example, AgGrow agreed to arbitrate any performance disputes with TEI but sued National as surety on the bond. TEI is the real party in interest in the lawsuit because it has agreed to indemnify National, and National may assert TEI's defenses under the Construction Contract. Absent a discretionary stay, AgGrow will succeed in avoiding its duty to arbitrate performance issues under the Construction Contract if its suit on the bond is given priority over the parallel arbitration proceeding commenced by TEI.

The district court denied a discretionary stay, in part based upon its erroneous understanding that no arbitration proceeding was pending. The court was also concerned that arbitration is unlikely to resolve the entire dispute because Anderson did not agree to arbitrate and refuses to participate in or be bound by the arbitration. However, TEI and AgGrow may not avoid their agreement to arbitrate because they failed to obtain prior commitments to arbitrate from suppliers, subcontractors, or bonding companies whose conduct or contractual obligations may now be relevant in resolving the entire dispute. As the Supreme Court said in <u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213, 221 (1985), "we rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation."

In these circumstances, we must remand so that the district court may reconsider the question of a discretionary stay. There is now arbitration pending, and it should be given priority to the extent it is likely to resolve issues material to this lawsuit. On the other hand, the lawsuit involves more parties and claims than the arbitration. In a complex, multi-party dispute of this type, issues such as the risk of inconsistent rulings, the extent to which parties will be bound by the arbitrators' decision, and the prejudice that may result from delays must be weighed in determining whether to grant a discretionary stay, and in fashioning the precise contours of any stay. <u>Compare</u>

See also <u>Webb v. R. Rowland & Co.</u>, 800 F.2d 803, 808 (8th Cir. 1986).

Contracting Northwest, 713 F.2d at 387, and Gilbane, 992 F.2d at 391 & n.8 (granting stays), with Sierra Rutile Ltd. v. Katz, 937 F.2d 743, 750-51 (2d Cir. 1991), and American Shipping Line, Inc. v. Massan Shipping Indus., Inc., 885 F. Supp. 499, 502 (S.D.N.Y. 1995) (denying stays).  Such issues are properly committed in the first instance to the district court's discretion.

The order of the district court denying National's motion for a mandatory stay is affirmed.  The denial of a discretionary stay is vacated, and the case is remanded for further proceedings not inconsistent with this opinion.  Each party shall bear its own costs on appeal.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.