**CAPITOL INDEMNITY CORPORATION,**
**Plaintiff,**

v.

**DAYTON BOARD OF EDUCATION, et al., Defendants.**

**No. 3:03cv404.**

United States District Court,
S.D. Ohio,
Western Division.

March 24, 2006.

Roger Lee Sabo, Stephen Withee, Schottenstein, Zox & Dunn, Columbus, OH, for Plaintiff.

Jack R. Rosati, Mark Evans, Michael S. Holman, Bricker & Eckler, Donald Byron Leach, Jr., Michael F. Copley, Buckingham Doolittle & Burroughs, Columbus, OH, Bradley Dean Anderson, Donald Jeffrey Ireland, Faruki Ireland & Cox PLL, Dayton, OH, for Defendants.

DECISION AND ENTRY OVERRULING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (DOC. # 56); DECISION AND ENTRY OVERRULING PLAINTIFF'S MOTION TO EXPEDITE DISCOVERY (DOC. # 57); DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING, AS MOOT, IN PART MOTION OF DEFENDANT DAYTON BOARD OF EDUCATION TO STAY PENDING ARBITRATION AND DETERMINATION OF THRESHOLD ISSUE OF ARBITRABILITY (DOC. # 61); DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART MOTION TO COMPEL ARBITRATION (DOC. # 64) FILED BY DEFENDANTS RICHARD AND CAROL WILLIS, WEHNER ROOFING AND TINNING AND WEHNER–WILLIS INVESTMENTS, INC.; LITIGATION STAYED; ADMINISTRATIVE PROCESSING ORDER

RICE, District Judge.

This litigation stems from contracts Defendant Dayton Board of Education ("Day-

ton Board") entered into with Defendant Wehner Roofing & Tinning, Inc. ("Wehner Roofing"), to replace the roofs on the Hickorydale and Kemp Elementary Schools. Defendant Ruscilli–Danis–Quandel–Miles–McClellan ("RDQMM") has acted as the construction manager at those sites and at other renovation projects at the Dayton schools, as a result of having entered into a contract with the State of Ohio, through the Ohio School Facilities Commission. Thus, RDQMM does not have a contractual relationship with any other party to this litigation. In accordance with the law of Ohio (*see* Ohio Rev. Code §§ 3313.46 and 3318.10), Wehner Roofing was required to post performance and payment bonds, as a result of entering into the contracts with the Dayton Board. Plaintiff Capitol Indemnity Corporation ("Plaintiff" or "Capitol") is the surety or obligor on those bonds, while Wehner Roofing is the principal and the Dayton Board is the obligee of them.[1] The purpose of those bonds was to provide the Board with a source of funds to pay for the completion of the projects in the event that Wehner Roofing defaulted and to ensure that its materialmen and subcontractors would be paid. Each of the contracts between the Dayton Board and Wehner Roofing contains a provision, providing that any claim arising out of or related to the contract is subject to resolution through arbitration. Each of the bonds issued by Capitol provides that the contract between the Dayton Board and Wehner Roofing concerning the particular school is made part of the bond, as if set forth therein.

Wehner commenced performance of the roofing contracts in October, 2002. In May, 2003, the Dayton Board sent notice to Wehner Roofing and Capitol, suspending the contractor from further performance under the contracts and indicating that there had been deficiencies in Wehner Roofing's work. The notice also gave Wehner Roofing seven calendar days in which to present an acceptable plan to cure its alleged default of the contracts. Although Wehner Roofing responded to this notice, the Dayton Board did not, in turn, reply to its contractor. As a consequence, Wehner Roofing has not been allowed to return to the projects. In late June, 2003, Capitol notified the Board that, since no termination had occurred, it was taking no further action under the performance bonds it had issued.

In June, 2003, the Board solicited other roofing contractors, including A.H. Sturgill Roofing Co. ("Sturgill"), seeking a quotation to complete the two roofing projects. That quotation was based upon a different set of plans and specifications than those upon which Wehner Roofing had based its bids. In particular, Sturgill would be required to remove and to discard the materials installed by Wehner Roofing.

In August, 2003, the Dayton Board terminated Wehner Roofing's roofing contracts, alleging that the contractor had defaulted on its obligations thereunder. Slightly less than ten days later, the Dayton Board notified Capitol that those contracts had been terminated and that it was obtaining proposals for the repair and completion of the work on Wehner Roofing's contracts. The Dayton Board also informed Capitol that it would proceed with the repair and completion of the contracts, unless Capitol would take over the remaining work. Capitol then offered to complete the work remaining under Wehner Roofing's contracts, with a reservation of rights based upon its assertion those contracts had been illegally terminated. The Dayton Board, however, insisted that

1. Capitol issued one bond each for Hickory-    dale and Kemp Elementary Schools.

any takeover be performed by one of the entities from which it had sought and received a quotation. The Dayton Board also mandated the complete removal of all work that had been performed by Wehner Roofing. In October, 2003, RDQMM terminated Capitol from the projects, asserting that it was in material default of its obligations as surety of the performance bonds. Thereafter, the Dayton Board contracted with Sturgill to complete the roofing work at Hickorydale and Kemp Elementary Schools. The amount of those contracts was more than $100,000 in excess of the amount of the previous contracts between the Board and Wehner Roofing. In January, 2005, the Dayton Board submitted an arbitration demand to the American Arbitration Association ("AAA"), setting forth a claim of $490,000 against Wehner Roofing and Capitol.

Capitol brings this litigation against the Dayton Board, RDQMM and Wehner Roofing. Capitol has also named Richard and Carol Willis, Wehner–Willis Investments, Inc.,[2] and the AAA as Defendants in this litigation. In its Amended Complaint (Doc. # 47), Capitol has set forth six claims for relief, to wit: 1) a request for a declaratory judgment against the Dayton Board to the effect that its (the Dayton Board's) actions have relieved Plaintiff of any obligations under the bonds (First Claim for Relief); 2) a claim of tortious interference with contractual or prospective economic relationships against RDQMM (Second Claim for Relief); 3) a claim of breach of contract, the bonds, against the Dayton Board (Third Claim for Relief); 4) a claim of indemnification against Richard and Carol Willis and Weh-

ner–Willis Investments (Fourth Claim for Relief); 5) a claim against the Dayton Board that the contracts it entered into with Sturgill are invalid under Ohio law (Fifth Claim for Relief); and 6) a claim against the AAA, seeking injunctive relief preventing the AAA from exercising jurisdiction over it (Sixth Claim for Relief). In addition, the Dayton Board has set forth a counterclaim against Capitol, for breach of duty of surety and bad faith, as well as a cross-claim against Wehner Roofing for breach of contract (see Doc. # 49), while the latter has set forth a cross-claim of negligent supervision against RDQMM. See Doc. # 50.

This case is now before the Court on the following motions, to wit: Capitol's Motion for Preliminary Injunction (Doc. # 56) and Motion to Expedite Discovery (Doc. # 57), the Dayton Board's Motion to Stay Pending Arbitration and Pending Determination of Threshold Issue of Arbitrability (Doc. # 61) and Wehner Roofing's Motion to Compel Arbitration (Doc. # 64).[3] As a means of analysis, the Court will initially rule upon the Plaintiff's Motion for Preliminary Injunction (Doc. # 56) and Wehner Roofing's Motion to Compel Arbitration (Doc. # 64), both of which raise the question of whether the disputes between Capitol and the Dayton Board must be arbitrated. The Court will then turn to other pending motions.

I. *Plaintiff's Motion for Preliminary Injunction (Doc. # 56) and Wehner Roofing's Motion to Compel Arbitration (Doc. # 64)*

With its motion, Capitol requests that the Court enter a preliminary injunction,

---

2. Richard and Carol Willis and Wehner–Willis Investments are alleged to have entered into a contract with Capitol, under which they agreed to indemnify Capitol for costs it incurs as a result of Wehner Roofing's failure to perform its obligations under its contracts with the Dayton Board.

3. The motion filed by Wehner Roofing has been joined by Robert and Carol Willis and Wehner–Willis Investments. For sake of convenience, the Court refers to that motion as having been filed by Wehner Roofing, alone.

preventing the AAA from proceeding with the Dayton Board's demand for arbitration. With its motion, Wehner Roofing takes the opposite point of view, requesting that the Court order that the disputes between itself and the Dayton Board, and Capitol and the Dayton Board, over the roofing contracts for Hickorydale and Kemp Elementary Schools, be arbitrated.[4] Wehner Roofing also requests that the Court order that its claims against RDQMM be resolved through arbitration. As a means of analysis, the Court will initially set forth the standards it must apply whenever it is asked to decide whether to order that a particular dispute be arbitrated, following which it will turn to the question of whether the disputes among Wehner Roofing, Capitol and the Dayton Board must be arbitrated. Finally, the Court will address Wehner Roofing's request that the Court direct all other claims of the parties be arbitrated.

However, before engaging in that analysis, the Court will briefly review the familiar principles it must apply, whenever it rules on a request for a preliminary injunction. In *Six Clinics Holding Corp. v. Cafcomp Systems, Inc.*, 119 F.3d 393 (6th Cir.1997), the Sixth Circuit reviewed those standards:

> The factors to be considered by a district court in deciding whether to grant a preliminary injunction are well-established: "(1) the likelihood that the party seeking the preliminary injunction will succeed on the merits of the claim; (2) whether the party seeking the injunction will suffer irreparable harm without the grant of the extraordinary relief; (3) the probability that granting the injunction will cause substantial

harm to others; and (4) whether the public interest is advanced by the issuance of the injunction." [*Washington v. Reno*, 35 F.3d 1093, 1098 (6th Cir. 1994)]. A district court is required to make specific findings concerning each of the four factors, unless fewer factors are dispositive of the issue. *See In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir.1985). For example, "a finding that the movant has not established a strong probability of success on the merits will not preclude a court from exercising its discretion to issue a preliminary injunction if the movant has, at minimum, 'show[n] serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if the injunction is issued.'" *Gaston Drugs, Inc. v. Metropolitan Life Ins. Co.*, 823 F.2d 984, 988 n. 2 (6th Cir.1987) (quoting *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir.1982)).

*Id.* at 399–400. Of course, "[t]he four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met." *Id.* at 400.

■■■■ Since arbitration is a matter of contract, a court can only order parties to arbitrate claims which they have agreed to submit to arbitration. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (noting that "arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes-but only those disputes-that the parties have agreed to submit to arbitration"); *Simon v. Pfizer, Inc.*, 398 F.3d 765, 775 (6th Cir.2005) (reit-

---

4. It bears emphasis that neither Capitol nor Wehner Roofing has asserted a claim against the other in this litigation. In addition, neither party has mentioned such a claim or Plaintiff's claim against Robert and Carol Wil-

lis and Wehner–Willis Investments in their memoranda pertaining to the pending motions. Therefore, the Court does not address in this Decision whether any of those claims are subject to arbitration.

erating that "that no matter how strong the federal policy favors arbitration, arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration") (internal quotation marks and citations omitted). Whether parties have contractually agreed to arbitrate a particular dispute is an issue for a court to decide. *Howsam v. Dean Witter Reynolds,* 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (holding that "a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide"). An arbitrator, rather than a court, however, must decide the antecedent procedural questions, such as whether conditions precedent to arbitration have been met. *Id.* (holding that arbitrator must decide whether a party's demand to arbitrate was time-barred); *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964) (holding that an arbitrator should decide whether the first two steps of a grievance procedure were completed, where these steps are prerequisites to arbitration).

■ Turning initially to the question of whether the Dayton Board's disputes with Wehner Roofing and Capitol, arising out of or relating to the roofing contracts, must be resolved through arbitration, Capitol points out that its only contracts with the Dayton Board are the performance bonds, which do not include arbitration provisions. In the absence of a contractual agreement requiring arbitration, Plaintiff's argument continues, it cannot be compelled to arbitrate the Dayton Board's claim against it, and the Court should enjoin the AAA from proceeding with the Dayton Board's demand to arbitrate.[5] Although this Court agrees with Plaintiff that neither performance bond contains an arbitration provision, the Court, nevertheless, concludes that Capitol must arbitrate its dispute with the Dayton Board. This Court bases that conclusion on *Exchange Mut. Ins. Co. v. Haskell Co.,* 742 F.2d 274 (6th Cir.1984), wherein, the Sixth Circuit held that a surety such as Capitol must arbitrate claims arising out of a performance bond, even though the bond did not contain an arbitration clause. That Sixth Circuit decision arose out of a contract between Haskell and Mitchell Homes, under which the former agreed to build a shopping center for the latter. Haskell, in turn, subcontracted part of the work to Rogersville Co., which obtained a performance bond from Exchange Mutual.[6] After a dispute had arisen, Haskell made a demand under the performance bond and initiated arbitration to resolve that demand. Exchange Mutual then brought suit, seeking to enjoin the arbitration. The District Court declined to enjoin the arbitration and dismissed Exchange Mutual's complaint. Upon appeal, the Sixth Circuit affirmed. In particular, that court held that Exchange Mutual was obligated to arbitrate its dispute with Haskell, because the prime contract between Haskell and Mitchell contained an arbitration provision, requiring disputes arising out of or

---

**5.** In its Amended Complaint and motion, Capitol refers to alleged defaults by the Dayton Board, as a result of failing to follow predicates to arbitration set forth in its contracts with Wehner Roofing. If Plaintiff contends that those alleged defaults serve as an additional basis for seeking an injunction from preventing the arbitration from proceeding, the Court cannot agree. Those types of defaults are the antecedent procedural questions which an arbitrator, rather than a court, must decide. *Howsam, supra.*

**6.** Exchange Mutual, like Capitol, was the surety on that bond, while Haskell, like the Dayton Board, was the obligee.

related to that contract be resolved though arbitration, the subcontract between Haskell and Rogersville incorporated by reference the prime contract, and the performance bond incorporated by reference that subcontract. The Sixth Circuit held that arbitration between surety and obligee is required when the performance bond incorporates by reference a contract containing an obligation to arbitrate. *Id.* at 276.[7] The performance bonds herein incorporate by reference the contracts between the Dayton Board and Wehner Roofing, and those contracts contain an obligation to arbitrate. Nevertheless, Plaintiff relies upon *AgGrow Oils L.L.C. v. National Union Fire Ins. Co.*, 242 F.3d 777 (8th Cir. 2001), wherein the Eighth Circuit reached the opposite conclusion in a case arising under similar circumstances. Deeming *Haskell* to be unpersuasively decided, the Eighth Circuit refused to follow it. *Id.* at 782. However, *apparently unlike Plaintiff which did not bother to cite Haskell in its motion*, this Court is not free to disregard the decisions of the Sixth Circuit. On the contrary, those decisions are mandatory authority which this Court *must* follow. Therefore, in accordance with *Haskell*, this Court is compelled to conclude that the Dayton Board's disputes with Capitol and Wehner Roofing must be arbitrated. Accordingly, the Court sustains Wehner Roofing's Motion to Compel Arbitration (Doc. # 64), as it relates to those claims. Moreover, since Capitol has failed to demonstrate serious questions going to the merits of its claim that its disputes with the Dayton Board are not subject to arbitration, the Court overrules its Motion for Preliminary Injunction (Doc. # 56).[8]

■ Wehner Roofing also requests that the Court order that its disputes with RDQMM be arbitrated. RDQMM has not entered into a contract with any other party involved in this dispute. Therefore, it is not the signatory to a contract requiring it to arbitrate disputes. The Sixth Circuit has recognized, however, that there are "[f]ive theories for binding nonsignatories to arbitration agreements [that] have been recognized: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel." *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 629 (6th Cir.2003).[9] Wehner Roofing argues that RDQMM can be forced to arbitrate, by virtue of the fact that it (RDQMM) is an agent for the Dayton Board. Alternatively, Wehner Roofing asserts that RDQMM is equitably es-

---

7. Other federal courts have reached the same result under similar circumstances. *Commercial Union Ins. Co. v. Gilbane Bldg. Co.*, 992 F.2d 386 (1st Cir.1993); *United States Fidelity & Guar. Co. v. West Point Constr. Co.*, 837 F.2d 1507 (11th Cir.1988). *See also, Gingiss International, Inc. v. Bormet*, 58 F.3d 328, 331–32 (7th Cir.1995) (noting that "[u]nder federal law, a subcontract with a guarantor or surety may incorporate a duty to arbitrate by reference to an arbitration clause in a general contract") (footnote omitted).

8. Plaintiff has requested an evidentiary hearing on that motion. Based upon the unambiguous language in the roofing contracts between Wehner Roofing and the Dayton Board and the performance bonds, alone, this Court has reached the inescapable conclusion that the Plaintiff is required to arbitrate its claims with the Dayton Board and that, therefore, Plaintiff is not entitled to injunctive relief. Since no evidence could change the unambiguous language of those contracts, the Court will not conduct an evidentiary hearing. Such a hearing would serve no useful purpose and would waste the resources of the Court and of the parties.

9. Above, the Court has concluded that Capitol, which has not signed an agreement which contains an arbitration provision, must arbitrate its claims with the Dayton Board, because the contracts between them incorporated by reference an arbitration provision.

topped from resisting arbitration. RDQMM disagrees with both arguments. As a means of analysis, the Court will address Wehner Roofing's arguments in the above order.[10]

■ As is indicated above, RDQMM was involved in the renovation work at Hickorydale and Kemp Elementary Schools, as a result of having entered into a contract with the State of Ohio, through the Ohio School Facilities Commission. RDQMM does not have a contractual relationship with the Dayton Board or any other party to this litigation. In *Evans v. Ohio St. University*, 112 Ohio App.3d 724, 680 N.E.2d 161 (1996), the court restated the fundamental definition of an agency relationship:

> An "agency relationship" is defined as "a consensual fiduciary relationship between two persons where the agent has the power to bind the principal by his actions, and the principal has the right to control the actions of the agent." *Funk v. Hancock* (1985), 26 Ohio App.3d 107, 110, 26 OBR 317, 320, 498 N.E.2d 490, 494, citing *Haluka v. Baker* (1941), 66 Ohio App. 308, 312, 20 O.O. 136, 138, 34 N.E.2d 68, 70.

*Id.* at 744, 680 N.E.2d at 174. *Accord, Eyerman v. Mary Kay Cosmetics,* 967 F.2d 213, 219 (6th Cir.1992) (citing *Funk v. Hancock,* 26 Ohio App.3d 107, 498 N.E.2d 490 (1985)); *Abrams v. Toledo Auto. Dealers Assn.,* 145 Ohio App.3d 187, 191, 762 N.E.2d 411, 414 (2001). Agency is a consensual relationship. *Brainard v. American Skandia Life Assur. Corp.,* 432 F.3d 655, 661 (6th Cir.2005).

■ RDQMM argues that applying the foregoing principles to the terms of its contract with the State of Ohio leads to the conclusion that it has not acted as an agent of the Dayton Board. This Court agrees. As an initial matter, that contract expressly provides that RDQMM is without the authority to bind the Dayton Board. Therefore, one of the essential attributes of an agency relationship is missing. RDQMM's lack of authority to bind the Dayton Board is buttressed by the provision in the contract between the construction manager and the State of Ohio under which payments to contractors such as Wehner Roofing must be approved, not only by RDQMM, but also by the architect selected by the Dayton Board and the Dayton Board, itself. Moreover, Wehner Roofing relies upon a provision in *its* roofing contracts with the Dayton Board, in order to support its contention that RDQMM can be compelled to arbitrate, even though it has not agreed to do so. Although those contracts provide that RDQMM shall be the agent of the latter, this Court cannot conclude that a contract to which RDQMM is not a party renders it an agent and, thus, subject to an arbitration clause in a contract to which it is a stranger and has not agreed, given that agency is a consensual relationship.

■ Accordingly, the Court concludes that an agency theory does not serve as the basis for requiring RDQMM to arbitrate the claim which Wehner Roofing has brought against it.

■ Alternatively, Wehner Roofing argues that RDQMM can be compelled to

---

10. RDQMM also argues that Wehner Roofing is without standing to seek an order from the Court compelling arbitration of claims between the parties, because Wehner Roofing does not have a valid claim. It is axiomatic, however, that a court is limited to determining whether the parties have agreed to arbitrate and cannot consider the merits of a claim when determining whether to order arbitration. *Burden v. Check into Cash of Kentucky, LLC,* 267 F.3d 483, 485 (6th Cir.2001). Therefore, this Court rejects the argument of RDQMM in that regard.

arbitrate the claim of the former against the latter, in accordance with an equitable estoppel theory. In support of that argument, Wehner Roofing relies upon *Javitch, supra,* wherein the Sixth Circuit wrote:

> The court in *Thomson[-CSF v. Am. Arbitration Ass'n,* 64 F.3d 773 (2d Cir. 1995) ] held that a nonsignatory may be bound to an arbitration agreement under an estoppel theory when the nonsignatory seeks a direct benefit from the contract while disavowing the arbitration provision. *Id.* at 778–79. When only an indirect benefit is sought, however, it is only a signatory that may be estopped from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the underlying contract. *Id.* at 779. *See Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen,* 206 F.3d 411, 418 (4th Cir. 2000) (nonsignatory asserting breach of contract and breach of contract claims under the contract could not avoid the arbitration agreement in the contract).

315 F.3d at 629. Herein, RDQMM is not seeking a direct benefit from the contracts between Wehner Roofing and the Dayton Board, which contain the arbitration provisions. The direct benefit RDQMM obtains from the renovation of the Dayton schools flows from its contract with the State of Ohio, in accordance with which it is compensated for its performance. At most, RDQMM obtains an indirect benefit from the contracts between Wehner Roofing and the Dayton Board. Accordingly, the Court rejects Wehner Roofing's proposition that RDQMM is obligated to arbitrate under an equitable estoppel theory.

Based upon the foregoing, the Court overrules Capitol's Motion for Preliminary Injunction (Doc. # 56). In addition, it sustains in part and overrules in part Wehner Roofing's Motion to Compel Arbitration (Doc. # 64). That motion is sustained as it relates to the request to compel Plaintiff and the Dayton Board to arbitrate their claims between each other and overruled as it relates to the arbitration of Wehner Roofing's claim against RDQMM.

II. *Plaintiff's Motion to Expedite Discovery (Doc. # 57) and the Dayton Board's Motion to Stay Pending Arbitration and Pending Determination of Threshold Issue of Arbitrability (Doc. # 61)*

With its motion, Plaintiff requests that the Court enter an order, directing five individuals to appear at their depositions within a stated period of time. *See* Doc. # 57. The Plaintiff seeks this discovery in order to prepare for a hearing on its request for a preliminary injunction. Above, however, this Court has noted, since the unambiguous language from the roofing contracts and the performance bonds leads to the inescapable conclusion that Plaintiff must arbitrate its claims with the Dayton Board and that, therefore, it is not entitled to a preliminary injunction, the Court will not conduct an evidentiary hearing, because it would serve no useful purpose. *See* Fn 8, *supra.* Therefore, there is no need for Plaintiff to conduct discovery to prepare for such a hearing. Accordingly, the Court overrules Plaintiff's Motion to Expedite Discovery (Doc. # 57).

■■■■ With its motion, the Dayton Board requests that the Court stay this litigation pending arbitration.[11] *See* Doc.

---

11. The Dayton Board also requests that the Court stay this matter pending determination of the threshold issue of arbitrability. Given that the Court has resolved that issue herein, it overrules, as moot, that branch of **the Dayton Board's Motion to Stay Pending Arbitration and Pending Determination of Threshold Issue of Arbitrability (Doc. # 61).**

# 61. As a result of the Court's ruling on the Motion to Compel Arbitration, all claims between the Dayton Board and Plaintiff, arising out of or related to the roofing contracts between the former and Wehner Roofing, and the Dayton Board's claim against Wehner Roofing will be resolved through arbitration. This Court is unquestionably required to stay this litigation, as it relates to the claims which will be arbitrated. *See* e.g., *Highlands Wellmont Health Network v. John Deere Health Plan*, 350 F.3d 568, 573 (6th Cir. 2003) (citing 9 U.S.C. § 3). However, Plaintiff's claim against RDQMM, its claim against Richard and Carol Willis and Wehner–Willis Investments and Wehner Roofing's claim against RDQMM will not be arbitrated. When some but not all claims in an action must be resolved through arbitration, a court must decide whether to stay the remainder of the litigation. *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir.2003). Herein, the Court will stay the claims which will not be resolved through arbitration, because resolution of the matters before an arbitrator will greatly facilitate the resolution of the other claims by setting parameters for damages for those claims.

Accordingly, the Court sustains the branch of the Dayton Board's Motion to Stay Pending Arbitration and Pending Determination of Threshold Issue of Arbitrability (Doc. # 61), with which it has requested a stay of this litigation pending arbitration. Therefore, the Court orders that this litigation be stayed. Counsel are to inform the Court when the arbitration has been completed. The above captioned cause is found suitable for administrative processing.